No. 2553

Second Circuit

---

## BASS v. SHREVEPORT-ELDORADO PIPE LINE COMPANY, INC.

---

(April 10, 1926, Opinion and Decree)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Master and Servant —Par. 158.**

If an employee is injured after his day's work was done while he was on his way to his home not anywhere near the place where he worked while he was being permitted to ride on a truck as a matter of accommodation, the accident did not arise out of or in the course of plaintiff's employment, nor was it an incident thereto; and, therefore, he is not entitled to compensation under Workmen's Compensation Act No. 20 of 1914.

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo. Hon. J. H. Stephens, Judge.

Action by William Bass against Shreveport-Eldorado Pipe Line Company, Inc., for compensation under the Workmen's Compensation Act No. 20 of 1914.

There was judgment for plaintiff and defendant appealed.

Judgment reversed.

Herndon & Herndon, of Shreveport, attorneys for plaintiff, appellee.

Wilkinson, Lewis & Wilkinson, of Shreveport, attorneys for defendant, appellant.

ODOM, J. Plaintiff brings this suit under the Workmen's Compensation Act (Act No. 20 of 1914 and amendments) to recover 65% of his wages for 100 weeks for the loss of an eye due to an accident which he alleges arose out of and during the course of his employment.

The defense is that the accident which caused plaintiff to lose his eye did not arise out of or in the course of his employment, and that the occupation of "water-boy", in which plaintiff is engaged, is not hazardous under the statute.

There was judgment in favor of the plaintiff as prayed for and defendant appealed.

## OPINION

Under the view which we take of this case on another branch, it is not necessary for us to decide whether the plaintiff as a "water-boy" was engaged in a hazardous occupation.

We find in the record the following agreed statement of facts.

"That for several days prior to August 2, 1924, plaintiff had been employed by the Shreveport-Eldorado Pipe Line Company as a water-boy in connection with its bunch of laborers, changing the location of a pipe line in the Broadmoor Subdivision in the town of South Highlands; that on August 2, 1924, the plaintiff was paid off in full at noon and that thereafter he got on a truck owned by the defendant which was coming towards the city of Shreveport, and as said truck approached Centenary College on the Harts

Island road into the city of Shreveport, the plaintiff jumped off while the same was in motion, and fell, and that when he did so a splinter stuck in his left eye, as a result of which he entirely lost the sight of his eye; that the Shreveport-Eldorado Pipe Line Company, Incorporated, operates a line of pipe from Smackover, Arkansas, to the city of Shreveport, which line of pipe runs through Broadmoor and was the line of pipe being moved by the force of laborers, to which plaintiff was acting as water-boy."

Elaborating this statement somewhat, we find in the record the testimony of the plaintiff and of two witnesses called on behalf of the defendant, one of whom, Fred Crowder, was defendant's timekeeper and paymaster, and the other, Norman House, the driver of defendant's truck at the time the accident happened.

The testimony shows that defendant was laying an oil pipe line through Broadmoor, a residential section of the city of Shreveport, and for that purpose employed a number of laborers, among them the plaintiff. For about two years plaintiff had been employed by defendant as a ferryman to transport laborers and material across the river, but for about a week he had been employed as a "water-boy" to supply drinking water to the hands engaged in laying the pipe line.

About noon on Saturday, August 2, 1924, Fred Crowder, defendant's timekeeper and paymaster, went out to Broadmoor, where the work was being done, and paid all the men, including plaintiff, the full amount due them up to that time, and plaintiff as well as the other laborers quit work. The work at that place had been finished and the camp was being moved.

The testimony shows that there was no understanding that plaintiff should return to work the following week, and it is certain that he was not to do any more work on that day.

Defendant owned a large motor truck which it used to transport tools and supplies to and from Broadmoor where the pipe line was being laid. This truck was not used for the purpose of carrying laborers to or from their work, nor was there any understanding with the laborers that the employer should furnish them such transportation; but the laborers had been permitted, as a matter of accommodation, to ride the truck on convenient occasions going to or coming from their work.

Plaintiff explains his use of the truck as follows (Testimony, page 8):

"Q. Were you brought home every day in the truck from Broadmoor?

"A. No, sir, not every day.

"Q. How did you get home?

"A. Well, when the truck was not there I walked home, if I didn't happen to catch a ride another way, and when the truck was there and we accidentally happened to catch the truck, we would ride on the truck also."

At page 9 of the testimony plaintiff said:

"Well, of course, their hands, they had to carry them to wherever they were working at."

And he was asked:

"Q. Why do you say that?

"A. Well, the reason I say that, they had been in the habit of carrying them to wherever the job was. Whenever you

hires a man to work somewhere, you got to carry them wherever you are working at."

But he does not testify that there was ever any agreement or understanding that he or the other laborers were to be carried by defendant to or from their work. His testimony, as a whole, shows that when the truck happened along he was permitted to get on it and ride, as a matter of accommodation.

Both of the witnesses for defendant testified that the truck was not used for the purpose of transporting the laborers, but say the laborers were permitted to ride to and from their work, provided it was convenient for them to do so, merely as an accommodation to them.

Defendant maintained no living or boarding quarters for its hands. They lived in different sections of the city and its suburbs and got to their work as best they could. However, when one of them could catch the truck and get a ride, he was permitted to do so.

Plaintiff testified that on this particular occasion, after they had quit work and had been paid off, the hands were ordered to load the tools on the truck, which they did, and that then they were ordered to get on the truck, the operator of the truck saying: "All on" or "All aboard" or "Get aboard".

And he said:

"Oh, yes, sir, paid off everybody, and then he said (referring, we suppose, to the driver): 'Get aboard', and we all got aboard of the truck and we all come on just like they had been picking us up all the time."

Both the truck driver and Fred Crowder, the paymaster who was on the truck, say that plaintiff was not ordered to get on the truck nor was anything said with reference thereto.

However, even if any statement was made as to their getting on the truck, we think it was only a suggestion that the laborers who desired to ride had the privilege of doing so.

According to plaintiff's testimony and that of defendant's witnesses, the laborers were not carried to their homes on the truck but were allowed to ride to the point nearest their homes, where they got off and from which point they walked.

When the truck got to where plaintiff wanted to get off in order to walk on to his home, some one announced that he wanted to get off and the driver began to slow down, and while he was doing so and before the truck stopped the plaintiff jumped off and in some way fell, sticking a splinter in his eye, which caused him to lose it.

Under such circumstances we do not think the accident which caused the loss of the plaintiff's eye arose in the course of his employment. His day's work was done and he had ceased to labor. He had been paid off and was on his way home. He was not at or anywhere near the place where he worked and was not on or near defendant's premises. The accident did not occur during the period of his employment.

In a Corpus Juris treatise on workmen's compensation acts, Mr. Donald J. Kiser says, at page 80:

"It has been said that in general terms an injury to an employee arises in the

course of his employment when it occurs within the period of his employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental thereto."

And further, on page 81:

"The period of employment is not confined to the period for which wages are paid, and may extend beyond the hour of the employee's actual labor, the relation of master and servant existing wherever the servant is under the master's control and subject to his directions."

In the case at bar the plaintiff was not reasonably fulfilling any of the duties of his employment, nor was he engaged in doing something incidental thereto. He was not at the time under defendant's control nor subject to its directions. Plaintiff was not at the time working at all. He had quit work, had been paid off, and was going home. The only theory under which it could be urged that plaintiff was entitled to recover is that injuries received by laborers while on their way to or from their work may be said to arise out of and in the course of their employment.

As a general rule, the relation of master and servant ceases when the servant leaves the place of his employment at the close of a day's work to go to his home.

In the case of Podgorski vs. Kerwin, a case decided by the Minnesota Supreme Court and reported in 175 Northwestern 694, it is said:

"It is a well-settled general rule that an injury suffered by an employee in going to or returning from his employer's premises where the work of his employment is carried on, except in special instances not here involved, does not arise out of his employment so as to entitle him to compensation."

And in the case of Arthur C. Nesbit vs. Twin City Forge & Foundry Co., 177 Northwestern 131, the same court said:

"As a general rule an injury suffered by an employee in going to or returning from his employer's premises, where the work of his employment is carried on, does not arise out of his employment so as to entitle him to compensation under workmen's compensation acts."

We find no dissent from this general rule.

The courts, however, generally recognize an exception to the general rule as follows:

"Where the employee is injured while riding to or from his work in a conveyance provided by the employer, after the real beginning of the employment, in compliance with one of the implied or express terms of the contract of employment, for the mere use of the employees, and is one which the employees are required, or as a matter of right are permitted, to use by virtue of the contract, the injury may be held to have arisen out of and in the course of the employment so as to entitle the employee to compensation."

In an elaborate case note found in 10 A. L. R. 169, the general rule is thus stated:

"It is generally held that where transportation is furnished by an employer as an incident of the employment, an injury suffered by an employee in going or coming in a vehicle so furnished by the employer and under his control, arises out of and is within the course of his employment within the meaning of workmen's compensation acts."

And in support of the text the annotator cites cases from California, Connecticut, Maryland, Massachusetts, Minnesota, New York, Wisconsin and England.

The above note is suplemented by one found in 21 A. L. R. 1223 where more recent cases are cited and reviewed to the same effect.

A reading of the cases cited, where the courts have held that an accident to an employee, while riding to or from his work, arises out of and during the course of his employment, will disclose that in such cases the transportation was furnished by the employer as an incident of the contract of employment or was part of the consideration therefor. But, so far as we have been able to find, no court has held that an employee was entitled to compensation when injured on his way to or from his work unless he was being transported by the employer under circumstances as above outlined.

The case of Lagrone vs. McIntyre Lumber Company, 1 La. App. 564, Courts of Appeal reports, is referred to in support of the theory that the injury which plaintiff in this case received happened in the course of his employment; but that case is not authority for so holding. There the court said:

"It is not denied that the injury occurred while plaintiff was riding on defendant's handcar running on defendant's tramroad from defendant's corral to a boarding house at defendant's mill run by defendant's authority."

The court's holding in that case was based upon the principle laid down in the case of Provost vs. Gheens Realty Co., 151 La. 508, 92 South. 38, as follows:

"An employee going from his work to his lodging house on the employer's premises, where he had the privilege of sleeping as a part of the compensation for his work, was performing services arising out of and incidental to his employment in the course of his employer's trade, business and occupation, within the Employers' Liability Act, Section 1, Paragraph 2."

The principle underlying the holding in the Lagrone case is that the employee was never off the employer's premises; he was riding on a conveyance owned by the defendant, with its consent, and was going to a boarding house furnished by the defendant for the accommodation of its employees. And while it is stated by the author of that opinion that the boarding house was not furnished as part of the consideration of the employment, yet the court took into consideration the fact that the laborers were working out in the forest, away from boarding facilities, and that had the defendant not furnished its employees with such boarding and lodging facilities it is very probable that it could not have secured laborers to operate its logging and mill plant, and that the boarding apartment was, in a sense, part of compensation. To say the least, it is evident that the employer in the Lagrone case recognized the facilities which it furnished as necessary in the operation of its business; otherwise they would not have been furnished.

We think it may well be said that the court, in its holding in the Lagrone case, "went the limit".

In the case at bar, the plaintiff's work was finished for the week and he had been paid off; he was on his way home when the accident happened, and was more than a mile from defendant's premises. He was entirely out of his employ-

er's control and was not where he was performing or where he could perform any service for his employer; he was riding on a conveyance not used to carry him as an incident of his employment or as part of his compensation, but he was permitted to ride on it as a matter of accommodation; he was not on his way to living or boarding quarters furnished or controlled by the employer as an incident of his employment or part of his compensation; he was on his way to his own home. Under such circumstances, the accident did not arise out of or in the course of plaintiff's employment nor was it an incident thereto, and therefore he is not entitled to recover.

For the reasons assigned it is therefore ordered, adjudged and decreed that the judgment appealed from be reversed and set aside and plaintiff's suit is dismissed at his cost.

------

Under the authority of Lagrone vs. McIntyre Lumber Company, 1 La. App. 564, Reynolds, J., dissents.