No. 2959

Second Circuit

MAY v. LOUISIANA CENTRAL LUMBER COMPANY

(May 13, 1927.   Opinion and Decree.)
(June 28, 1927.   Rehearing Refused.)

(*Syllabus by the Editor*)

1. **Louisiana Digest—Master and Servant —Par. 158.**

Where an employee, using the conveyance of his employer in returning from his work to his home with the knowledge of the employees of the defendant in charge of the train, is injured while alighting from the train; the agreement of the employer to furnish the conveyance is implied from the action of the parties and the injury arose in the course and out of the employment under the Workmen's Compensation Act No. 20 of 1914.

2. **Louisiana Digest—Master and Servant —Par. 160 (a).**

An employee who jumps from a moving train while in the course of his employment with the knowledge of and without protest from the trainmen, although grossly negligent, his act cannot be deemed equivalent to deliberate failure to use the guard furnished for his protection, within the meaning of the Workmen's Compensation Act No. 20 of 1914.

3. **Louisiana Digest—Appeal—Par. 625; Master and Servant—Par. 160 (I).**

The trial court, having the advantage of seeing the injured employee, noting the extent of the disability, and hearing the testimony of the physicians, its judgment on matters of fact being clearly correct will be affirmed.
(The recent amendment to Act 20 of 1914 is Act 85 of 1926.—Editor's Note.)

Appeal from the Eighth Judicial District Court of Louisiana, Parish of Caldwell. Hon. F. E. Jones, Judge.

Action by Marvin J. May against Louisiana Central Lumber Company, et al.

There was judgment for plaintiff and defendants appealed.

Judgment affirmed.

Julius T. Long, A. Leonard Allen, of —————————, attorneys for plaintiff, appellee.

Thornton, Gist & Richey, of Alexandria, attorneys for defendants, appellant.

Odom, J. concurs.

WEBB, J. This action arises under the Employers' Liability Law (Act 20 of 1914 and amendments), and the plaintiff alleges that while in the course of his employment and in an accident arising out of his employment, he received injuries resulting in permanently totally disabling him to do any work of a reasonable character, and that he is entitled to receive compensation for the period of his disability not exceeding four hundred weeks, subject to a credit of two hundred and twenty-five dollars, compensation paid from the date of the accident on April 8, 1926, to September 1, 1926.

The defendant denies liability, and while admitting that compensation was paid following the accident, it alleges that the payments were made in error, induced by the false representations of the plaintiff as to the manner in which he was injured, and it alleges that plaintiff was not injured while in the course of his employment or in an accident arising out of the same, and that the accident was due solely to the failure of the plaintiff to use an adequate protection against ac-

cident provided for him and further, in the alternative, in the event that it should be held that defendant was liable, that it had paid plaintiff full compensation for the time he was disabled and in event it should be held it was not liable, or that the accident did not arise in the course of and out of the employment, defendant further prayed that it have judgment against plaintiff for the amount which had been paid.

On trial it was held that the accident had arisen in the course and out of plaintiff's employment and had resulted in partially disabling him to do work of a reasonable character, and judgment was rendered in favor of plaintiff on that basis, less the period of time for which compensation was paid, from which defendants appeal, and plaintiff has answered the appeal, praying that the amount of the weekly payment be increased.

## OPINION

The defendant, Louisiana Central Lumber Company, operates a saw mill and pulp mill, and its co-defendant, L. S. Waldrop, had contracted to cut the lumber company's timber to be used in its mill, and plaintiff was one of the laborers employed by Waldrop to cut the timber.

The lumber company operated a railroad (we presume for the purpose of hauling the timber to its mill) and the evidence shows that for the convenience of persons who were engaged in cutting the timber coaches or cabooses were hauled by the train in which the workmen engaged by it were permitted to ride to and from their work.

The plaintiff lived within an approximate distance of three-quarters of a mile from defendant's railroad and an approximate distance of a mile and a half from the place where he worked, which was about three-quarters of a mile from the terminus of defendant's road where its train stopped, and plaintiff could reach his home from his work either by walking directly to his home or by going to the point where the train stopped, and boarding the train, and thence ride for a short distance, and thence walk to his home, but whether he walked directly from his work to his home or to the railroad and by train to the nearest point to his home, the distance which he would have to walk would be approximately the same, and the evidence shows that plaintiff did not usually use the train but walked directly home from his work, but it is shown that sometimes he would take the train and that the employees of defendant in charge of the train knew that plaintiff sometimes rode on the train in going to and from his work.

On the day prior to the accident, plaintiff had left an axe at some place between the point where he usually left the train when using that route, and his home, and on the day of the accident he quit work about three o'clock in the afternoon and went to the railroad with the intention of using that route in returning home, and of getting his axe on the way from the railroad to his home, and after arriving at the railroad he waited for an hour or two until the train was ready to start when he boarded it, and when the train, which was running at a speed of between twelve and fifteen miles per hour reached the point where plaintiff wished to get off he attempted to alight from the moving train and in doing so he slipped or fell in such manner as to seriously injure his left arm and right foot,

He was attended by a physician in the employ of the lumber company, who re-

ported the accident and on the report the company through an insurance agency paid plaintiff compensation for the period from April 26, 1926, the date of the accident, to August 31, 1926.

The evidence does not show with certainty why the defendant ceased making the payments although it indicates there were two reasons, in that it appears that the physician who represented the lumber company and who treated the plaintiff having advised the lumber company that plaintiff was able to resume work, and plaintiff refusing to do so he was referred to the insurance agency through whom the payments had been made which had investigated the accident and had concluded that it had not arisen in the course and out of the employment, and so informed plaintiff, but agreed to make the last payment in full settlement and it was accepted on that condition by plaintiff.

However, on September 3, 1926, plaintiff filed the present suit and at the trial on January 7, 1927, it appeared that plaintiff had not regained the full use of his arm in that he could not entirely straighten it and the radiographs taken of his foot showed a fracture of the heel which had resulted from the accident could still be detected and plaintiff testified that he was unable to do any work of a reasonable character while the physicians who testified differed in their opinions as to whether the plaintiff's condition should or should not cause any disability.

The questions which the parties urge here are, on behalf of defendants, that the evidence shows that the accident did not arise in the course and out of the employment and that defendants are not liable, and, in the alternative, that the disability which resulted from the acci-

dent had ceased at the time of the last payment; while plaintiff, having objected to the introduction of any evidence tending to show that the accident did not arise in the course and out of the employment on the grounds that defendants were estopped by having made the payments to deny liability, also urges that the evidence shows that the accident did arise in the course and out of the employment and that the amount fixed by the trial court for the weekly payments should be increased.

While defendant alleged that compensation had been paid in error induced by the fraudulent representations of plaintiff, the evidence fails to show that plaintiff made any false representations of fact, but conceding that defendants would have the right to show that the accident did not arise out of the employment after having made payments for compensation, although such payments were not made in error, we are of the opinion that the evidence shows that the accident arose in the course and out of the employment and we do not deem it necessary to pass on the plea of estoppel.

The defendants contend that the evidence shows that plaintiff was a mere licensee on its train, and, further, that the accident resulted from plaintiff's deliberately exposing himself to injury in attempting to leave the train while it was in motion.

Where an employee, while riding to or from his work in a conveyance under the control of and furnished by the employer as an incident of the employment is injured, it is generally held that the injury arose in the course and out of the employment. (In re: Donovan, 217 Mass. 76; 104 N. E. 431; also Bass vs. Shreveport-Eldorado Pipe Line Co. 4 La.

App. 109); and we assume that it will be conceded that where there is not an express agreement that the conveyance was so furnished the agreement may be implied from the action of the parties.

In the present instance, the evidence shows that the conveyance was under the control of the employer, that it was furnished for the convenience of the employees, and although it does not appear that the use of the conveyance by the plaintiff would be of any special convenience to him under ordinary circumstances, it shows that he had used the conveyance in returning from his work to his home with the knowledge of the employees of defendant in charge of the train, and that on the occasion of the accident he was using the conveyance for the purpose of returning home, and we are of the opinion that the conveyance was furnished to plaintiff as an incident of his employment and that the mere fact it may have been just as convenient for plaintiff to have used other means of returning to his home or that the reason of the plaintiff's using the conveyance in returning home from work on the occasion was in order to get his axe on his way from the train to his home, does not affect the situation, and that the accident having occurred while plaintiff was on the train it may be fairly said that the accident arose in the course and out of the employment and that he was entitled to recover compensation, unless it be that by attempting to leave the train while it was in motion he forfeited his right to recover.

Defendants plead that plaintiff, in attempting to leave the train while it was in motion, had deliberately failed to use an adequate guard furnished for his protection; but this defense does not appear to be urged here, and as the evidence shows that the employees had been accustomed to leaving the train while it was in motion with the knowledge of and without protest from the trainmen, one of whom testified that he did not consider plaintiff's action as dangerous, we do not think it could be said that the action of plaintiff, although grossly negligent, can be deemed to have been equivalent to deliberate failure to use a guard furnished for his protection, within the meaning of the statute.

As to the contention of plaintiff that the amount of the weekly payments should be increased, the evidence shows conclusively that plaintiff was only partially disabled to do work of any reasonable character, and while it does not show that plaintiff was able to earn any specific amount, the trial court had the advantage of seeing the plaintiff and noting the extent of the apparent disability with which he suffered, and under the testimony of the physicians, the weight of which shows that plaintiff will not suffer the loss of any physical function, we think the court was authorized to estimate and fix the earning capacity of plaintiff, and being of the opinion that the estimate made was not too great, we shall not disturb the judgment and it is affirmed.

ODOM, J. I concur in the decree. Defendant voluntarily paid plaintiff weekly compensation for nearly five months. These payments are in the nature of admissions of liability under the Act. After voluntarily making approximately twenty-five payments, defendant cannot be heard to deny liability.