## HALL v. ÆTNA LIFE INS. CO.
### No. 1418.

Court of Appeal of Louisiana.
First Circuit.
Jan. 21, 1935.

Wilkinson, Lewis & Wilkinson, of Shreveport, for appellant.

Ped C. Kay, of De Ridder, for appellee.

MOUTON, Judge.

It is alleged by petitioner that her deceased husband, H. E. Hall, while in the employ of the Unemployment Relief Committee of this state, now the Relief Administration, and in the course of his employment, was run over and killed by a train of the Missouri Pacific Railroad.

The suit was brought directly against the Ætna Insurance Company, defendant, and without joining the Unemployment Relief Committee and the Emergency Relief Administration, employer of deceased, H. E. Hall.

An exception was filed by defendant company, firstly, to the effect that the Unemployment Relief Committee and the Emergency Relief Committee of this state are agencies of the government of the United States, are without responsibility, and that therefore the defendant, as the insurer of said committees, is equally without responsibility; and, secondly, that the two committees were not joined with defendant company as defendants.

In the policy issued by defendant company, it is provided that insurance will be paid the employees entitled thereto under the Workmen's Compensation Laws of Louisiana, reference being made to Act No. 20, 1914, as amended. The provisions of the Compensation Laws of the state were therefore embodied in the policy.

In the case of Wyatt v. Finley, 167 La. 161, 118 So. 874, it was held that the employee was not a necessary party in a suit of this character, as it could be brought individually and directly against the insurance company on its primary obligation. See, also, same ruling in Baker v. Wall Drilling Co., 168 La. 513, 122 So. 711; hence, this suit was properly brought directly against defendant company.

The exception filed by defendant was correctly overruled below.

### Merits.

The question presented is as to whether or not H. E. Hall, when killed, was performing services arising out of and incidental to his employment.

In January, 1933, the Unemployment Relief Committee was engaged in building a public highway in Beauregard parish. Mr. Hall was employed as foreman by the Relief Committee to direct a number of employees who were engaged in the construction of that highway. It was the duty of Mr. McFatter, police juror of the ward where this work was going on, to show the places on the highway where work was needed. Part of the duties that devolved on Mr. Hall was to keep the tools required for the work, to haul them back and forth, and to have drinking water for the men under his charge. It is not disputed that these services constituted part of his duties under his employment. It also appears that work cards were served on these laborers under Mr. Hall.

It is claimed by plaintiff that it was while he was engaged in serving these work cards to carry on his work that Mr. Hall was run over by a railroad train and lost his life.

The contention of defendant company is, that he was not so engaged at that time, hence was not performing services arising out of and incidental to his employment.

Mr. Iles was paymaster for the Unemployment Relief Committee who, in connection with his job, delivered these work cards to the men employed in the building of that highway. He testifies that he personally delivered

some of these cards to these laborers, and at other times handed them over to the foremen, instructing them to deliver them to the employees who were working on the highway. Some of these cards were delivered to Mr. Hall by Mr. Iles, paymaster.

He testifies, that since the beginning of that work on the highway, it had been the practice or custom of Mr. Hall to deliver these cards.

Mr. Seals, who was working on that job, says: Mr. Hall generally "gave them these cards out" when on the work, when issued to him; and so testifies Mr. Nichols, one of these employees.

The evidence shows that it had been the practice and custom for these foremen to deliver these cards to the workmen.

Mr. Iles says he could not say if Mr. Hall was paid to deliver the cards, but his evidence shows that he says he handed some of these cards to a foreman "and instructed him to deliver them to the men."

This language from the paymaster indicates that he considered the delivery of the cards by the foremen as being part of their duty; and we have no doubt from the evidence that they were so accepted for delivery by the foremen in the same spirit. It is not disputed that these foremen had to keep the tools which were intrusted to them and had to carry them from one point to the other as might have been required in the performance of their services, under their contract, although there is no evidence to show that this duty formed part of their agreement or that they were given extra pay for the rendition of such services. We think that the evidence justifies the conclusion that the duty to deliver the cards constituted an implied obligation arising under the contract with the foreman engaged in that work, and was so accepted as the result of a practice or custom that prevailed during the prosecution of the work on the highway. This view of the contract, as interpreted by the conduct of the parties thereto, leads us to the conclusion, that in delivering these cards Mr. Hall acted within the scope of his employment. No doubt he honestly and in good faith believed he was acting under instructions in delivering the cards, and although he might have been in error, his wife and minor heirs, claimants herein, are entitled to compensation, if this service arose out of and was incidental to his employment, Thieman v. National Refrigerator, etc., Co., 9 La. App. 389, 120 So. 512.

In this case, as hereinabove stated, we are of the opinion that the delivering of the cards constituted, by implication, a part of the contract Mr. Hall had with the Relief Committee; and, even if he acted under the mistaken honest belief that he was instructed to deliver the cards, the claimants are entitled to relief, under our compensation statutes, if Mr. Hall was rendering this service and which arose out of his contract of employment and was incidental thereto.

Mr. Hall was killed by the train on January 20, 1933. Mr. Dave Lee was, on that day, working on the highway with other men under Mr. Hall, their foreman.

Mr. Lee testifies, that speaking to them, Mr. Hall said: "You fellows know when to knock off—I got to go—I got some cards to take, to deliver to some fellows and I am going to deliver them."

Mr. Seals, also working on the job on that day, testifies that Mr. Hall told him he had to go, to get away, but did not say where he was going that evening.

Mr. Nichols, another of the men, says: Mr. Hall told "me he had to deliver some cards that evening." The fact is that Mr. Nichols rode in Mr. Hall's auto with him a part of the way.

Mr. Baggett, witness for defendant company, says: Mr. Hall left the work at 3:30 in the afternoon, after quitting time.

According to the testimony of Mr. Lee, before leaving he told his men they knew when they had to "knock off," but he had to go to deliver these cards.

As he stated they knew when to knock off, this shows he had left before quitting time and that he was going to serve these cards in the interest of his employer.

Whether he had finished his work for the day or not when he left, the fact that he also told Mr. Seals that he had to get away without saying where he was going, and to Mr. Nichols, that he was leaving that evening to deliver these cards, shows that this mission was uppermost in his mind.

It is contended by defendant company that Mr. Hall was going to his home when he was killed; that his day's work was over; that he was away from the premises where he was working, and was not then engaged in rendering services that arose out of his employment or were incidental thereto.

The evidence shows that three cards were found in Mr. Hall's pocket after he was killed.

It is shown by Mr. Joseph Hall, son of the deceased, that he took his father's position, as foreman, after his death. He testifies that these cards were addressed to Messrs. Alston,

Cooly, and Farish; that he delivered them on the Monday following his father's death; and that they call for work on that Monday. Alston, Farish, and Cooly, to whom these cards were addressed, lived from a half, three-quarters, and one mile from the road his father was traveling when killed.

Mr. Hall was killed on Friday, and the cards called on these men for work on the following Monday. It is therefore apparent that he had no time to spare before delivering them. This fact may account for his statements to the parties, hereinabove mentioned, that he had to get away on that evening to deliver the cards on that evening. There can hardly be any doubt that when he left his work he had this mission uppermost in his mind, as he proceeded towards his home. He still had the cards in his pocket when killed, and the only reasonable, fair, and logical conclusion is that he was then on his way to carry out his purpose or mission by actual delivery of the cards to the parties to which they were addressed. In carrying out this purpose, he was acting as the employee of the Relief Committee, and his services, as such, arose out of and were certainly incidental to his employment.

Counsel for defendant refer to the case of Kern v. Southport Mill, Ltd., 174 La. 433, 141 So. 19, 21, where the court said: "The provision that the accident, to entitle the employee to compensation, must occur in the course of his employment, means nothing more than that it must have taken place during the hours of employment and not at any other time."

In this case, although the regular hours of employment ended at the place where the work was being actually done, it would have been impossible for Mr. Hall to have served these cards on Alston, Cooly, and Farish, who were not then present there, but were several miles away at their respective homes. As he was, however, in addition to his regular work, expected to hand over these cards to these parties, it must be held, that while going on this mission when he was killed, the accident took place "during the hour" or time of his employment, which brings this case within the doctrine of the Kern Case.

Counsel for defendant also quote, in part, the following from that case: "In determining, therefore, whether an accident 'arose out of' the employment, it is necessary to consider only this: (1) was the employee then engaged about his employer's business, and not merely pursuing his own business or pleasure?"

It is further said therein, that it must appear that it was his employer's business "which called him to the place and time of the accident and not his own pleasure or business."

Mr. Hall, as we see the case, was not merely pursuing his own business or pleasure when he was killed on that railroad crossing. He was then, as above explained, engaged in his employer's business. It was his employer's business which called him there at the time of the accident, and not his own pleasure or business. When Mr. Hall left where his men were working on the highway, it is true that he was going in the direction of his home. As he left hurriedly and for the purpose, as he repeatedly stated, of delivering these work cards to men that were to work on the job, his primary object was, as the evidence clearly shows, to hand the cards to these prospective laborers; and only, secondarily, to keep on his way to his home. If he had delivered the cards before the accident happened, it might be said the relation between him and his employer would have ceased at that time and there would have been "no causable connection between the source of his injury and the character of his employment." This is what was said in the case of Thibodeaux v. Yount Lee Oil Company, 13 La. App. 591, 128 So. 709, decided by this court and cited by counsel for defendant company.

The cards having been found in Mr. Hall's pocket after he was killed, it is manifest that he had not yet, at that time, accomplished his task or mission of handing them over to Alston, Cooly, and Farish which had prompted him in hurrying away when he left his men on the evening he lost his life. To hold that he was not engaged in that mission when he was run over by the train would be illogical and unreasonable under the facts and circumstances of this case.

Counsel for defendant refer to the following cases where it was held that when a workman is injured while going to or returning from his place of employment before the beginning, or after the conclusion of his daily work, is not hurt in the course of his master's trade, and cannot recover under the Workmen's Compensation Act. Bass v. Shreveport-Eldorado Pipe Line Co., 4 La. App. 107; Boutte v. R. L. Roland & Son, 15 La. App. 530, 132 So. 398; Grace v. Eisenhuth (La. App.) 150 So. 398; Nugent v. Lee Lumber Co., 4 La. App. 371; Thompson v. Glen Hill Gravel Co., 19 La. App. 854, 141 So. 797.

In this case, Mr. Hall left the place where he was employed before the conclusion of his

daily work for the purpose of delivering these cards, as hereinabove stated. Conceding, however, that he left there after he had concluded his daily work as supervisor of the men under him, after leaving he proceeded on his way to hand these cards over to three men who were to be on the job on the Monday following their delivery.

The fact that he was so engaged at that time should be considered as the controlling if not the determinative factor in a case of this character, because he was then engaged in the actual service of the company in the discharge of his duties as one of its employees. It must therefore be held that the fatal accident happened while deceased was performing a service for his employer arising out and in the course of his employment. That he was so engaged is proved with legal certainty and entitles his widow and minor heirs to recover compensation, as was decreed by the district judge.

Judgment affirmed.