## FOWLER et al. v. LOUISIANA HIGHWAY COMMISSION.*

### No. 4945.

Court of Appeal of Louisiana. Second Circuit.

May 2, 1935.

E. R. Stoker and L. L. Morgan, both of Baton Rouge, for appellant.

Geo. Wesley Smith, of Rayville, and K. Ann Dodge, of Monroe, for appellees.

TALIAFERRO, Judge.

Plaintiffs, the parents of Norman Fowler, deceased, alleging dependence upon him for support and subsistence, bring this suit against the Louisiana Highway Commission, employer, to recover compensation. The facts in the case are nearly all undisputed. The main issue involved, one of law, is whether deceased, when injured, was "performing services arising out of and incidental to his employment in the course of his employer's trade, business or occupation," within the meaning of the Workmen's Compensation Law (Act No. 20 of 1914, as amended), as interpreted, construed, and applied by the courts of the state.

Deceased, a minor, was employed by defendant in September, 1931, as a day laborer to work on the highways in Tensas parish, then being resurfaced with gravel, under the direction of the maintenance unit whose headquarters were at Winnsboro in Franklin parish. He lived with his parents in the Liddieville community some eight or ten miles west of Winnsboro, and about thirty-five miles from where he intended to work the day he was injured.

It appears that some time prior to 1931, defendant decided to employ white men in lieu of colored labor to do the heavy work incident to road construction in Tensas parish, but was unable to secure the services of an adequate number in that parish. The superintendent, Mr. Ed Randall, then turned to Franklin parish for the needed help. A large number in that parish, from time to time, were employed to go into Tensas parish and work on the roads. Some of these employees used their own cars in going to and from this work. Others moved with their families to near the scene of the work and established temporary living quarters there. Some would return to their homes in Franklin parish at week-ends in cars of colaborers, and would return to their work on Monday morning in same manner. All who did not establish living quarters secured board and lodging at or near where the roadwork was being done. It is not contended by plaintiffs, nor could it well be done, that defendant or its agents expressly agreed to gratuitously transport any of these workmen to or from their work, but it is earnestly urged and contended that there was an implied understanding that such would be done, or that furnishing of such transportation was an incident to the contract of hiring. A week or more after workmen from Franklin parish began work on the roads over in Tensas parish, some of them requested of their foreman the use of a truck to return to their homes at the weekend. This request was communicated to the superintendent, Mr. Randall, and he acceded thereto, although at the time, to his knowledge, there was a strict rule of defendant against the use of the trucks at any time for purposes of pleasure. Mr. Randall did not construe his action in this respect as a breach of the rule, as he thought it would be beneficial to the commission as well as an accommodation to the workmen. His position in this respect, and the facts of the contract of hiring of these workmen, is clearly disclosed from the following excerpt from evidence given by him in the case, viz.:

"Q. Now what was the custom of the Commission in transporting the labor from Franklin Parish to the job in Tensas Parish? A. Well, there wasn't any agreement, but we did give them permission to go and come on week-ends in the highway truck, used one truck to turn it over to one certain man to drive, to bring the men back and forth on week-ends.

"Q. Now was it necessary in order to get the labor, to do that; to bring them back on the week-end and take them back on Monday morning? A. Well, it worked out good help; it was a help to the man and a help to the Commission, I figured. I was the sole cause of that all right, they needed the labor, we needed the labor and the labor needed the work, that was the method we used in being able to get the labor that we wanted.

"Q. Now when a man accepted employment from Franklin Parish, with the Commission, he knew that the Commission was transporting them backwards and forth, didn't he? A. Well, it wasn't agreed, No.

"Q. You may not have agreed to do that, still he knew it was being done? A. Yes.

"Q. That was the common knowledge? A. Chances is he did, yes.

"Q. It was the common knowledge that is what you were doing, wasn't it? A. Yes."

The modus operandi here discussed grew into a week-end practice. A truck would be turned over to a trusted employee to drive, and he would carry several of the laborers to their homes in Franklin parish after work was over on Saturday evenings, and bring them back to the place of their work early Monday morning. This practice was known to young Fowler when he first began to work for defendant. It seems to have been generally known in and about the community wherein his parents lived. Having no motor vehicle of his own, he was necessarily dependent upon others, or defendant, to visit his parents at intervals. However, it was a personal matter to the workmen whether and when they returned to Franklin parish. Defendant made no rule in that regard.

On Saturday evening, December 12, 1931, Norman Fowler rode from his work in Tensas parish to his home in a truck of defendant, driven by a colaborer. Other workmen accompanied them. In keeping with the custom, it was understood that this truck driver, early the following Monday morning, would pick up these same men at certain places along the highway and return them to Tensas parish for the week's work. This trip was begun before daylight Monday morning. The driver and another workman were in the truck as it approached and passed the spot where young Fowler was to be at the time. They did not see him, but the truck's rate of speed was there reduced. They went on down the road a short distance and called for him at his parent's home, and being by them advised he had left there some thirty minutes previous, they turned around and proceeded back down the road over which they had just passed, and found deceased on the roadside badly injured. His groans and cries for help had awakened some farmers who lived nearby, and these reached him before the truck did. The testimony and pertinent circumstances convince us that deceased, when he became convinced the truck was not going to stop where he was standing, undertook to board it while in motion, failed in the attempt, fell to the ground, and its right rear wheel passed over his body. This is the version of the facts of the accident as related by deceased as soon as he was reached by others. Circumstantial evidence bearing upon this question is sufficient in probative weight to satisfy us that the accident occurred in this manner. Defendant, however, does not concede this to be correct.

Deceased was not able to walk thereafter. He lingered several months in a sanitarium in Winnsboro, and was taken to the Charity Hospital in Shreveport three different times, and died therein on December 6, 1932, nearly one year after being injured. The Union Indemnity Company, defendant's insurer, paid him compensation to the date of his death, and $250 on hospital expenses. The commission paid physicians', hospital and nurses' bills incurred while deceased was at the Winnsboro sanitarium, amounting to more than $1,800. The surety company becoming insolvent, its corporate capacity was terminated and receivers appointed January 6, 1933, to wind up its affairs. Hence, cessation of payments by it.

This suit was thereafter instituted by plaintiffs. They aver that the truck that ran over their son was at the time driven by an employee of defendant and was then being used in the prosecution and futherance of the work of the commission in the building, repairing, and construction of highways in Tensas parish, and they allege the conclusion that the facts and circumstances of his employment and injury disclose that the accident, producing the injury, arose out of and in the course of his employment. They also allege that deceased worked for and with them on the farm, and materially aided them in earning a livelihood for themselves and their other children; that he contributed a part of his earnings to them from time to time; and that they were dependent upon his earnings for support and subsistence.

Defendant admits its employment of Norman Fowler to do roadwork in Tensas parish, but denies that there was any agreement, express or implied, in connection therewith to transport him to and from his work, and denies positively that he was acting within the scope of his employment when injured; that transporting him weekly to and from his work was merely an accommodation to him and not out of any duty to him as an incident to his employment. In all other material respects the allegations of fact and conclusions of law set up by plaintiffs as a basis for recovery are denied.

Defendant appealed from judgment for plaintiffs as prayed for.

We do not think the facts and circumstances warrant the conclusion that there was an implied duty or obligation on defendant to transport these laborers to their work at the beginning of the week and back to their homes at week-ends. If such were true, it is likely all workmen would have exacted compliance therewith, even those having their own cars. Perhaps none would have gone to the expense of moving into Tensas parish if

free transportation to and from their work would have been regularly available to them. It seems obvious to us that the action of defendant's superintendent in allowing the use of some of the trucks to return employees to Franklin parish and carry them back to their work was purely an accommodation on his part. As stated heretofore, it was not agreed to at the beginning, as his permission to so use the trucks was sought and secured after work had been going on for a week or more. Thereafter, such became a weekly practice.

■ It is but to restate a well-grounded legal principle to say that the rule is that injuries to workmen while going to or returning from the scene of their labor are not compensable. The rule is not without its exceptions. It has been frequently held that where transportation to and from work is a concomitant of the contract of hiring, that employment begins and ends with the beginning and ending of the transportation, and injuries sustained during this period are compensable. Mahaffey v. Mill Creek Lbr. Co. (La. App.) 147 So. 834; Keyhea v. Woodward-Walker Lbr. Co. (La. App.) 147 So. 830, 831; Williams v. O. K. Construction Co. (La. App.) 151 So. 784; Thompson v. Bradford Motor Freight Line (La. App.) 148 So. 79; Bass v. Shreveport-Eldorado Pipe Line Co., 4 La. App. 107.

Scores of other cases involving the principle here discussed could be cited. The Williams Case, supra, in some respects more nearly approaches the facts of the instant case than any other we have found or have been cited to. In that case the workman was killed while being transported by truck from his home in the city of Alexandria, after spending Sunday there, to the locality of his work, but there the transportation from work to home and back at week-ends was expressly included, as an obligation of the employer, in the contract of hiring.

■■ In the present case, deceased had not even boarded the vehicle in which he was to ride to his work. The time was over three hours before he was due to begin work, and the place was nearly forty miles from where he intended to work. His services were not indispensable to the carrying on of the work. It would require a stretching of the law beyond "the limit" to hold, in view of these and other established facts in the case, that deceased's employment began when he reached the roadside to board defendant's truck en route to Tensas parish.

While the manifest tendency of the courts, and justifiably so, is to interpret and apply the provisions of the Workmen's Compensation Law most liberally, yet there must be a limit to the cases to which its provisions are applicable. The following cases, a few of the many, reflect this to be true: Bass v. Shreveport-Eldorado Pipe Line Co., supra; Boutte v. R. L. Roland & Son, 15 La. App. 530, 132 So. 398; Nugent v. Lee Lumber Co., 4 La. App. 371; Crandell v. Philpot Const. Co. (La. App.) 142 So. 313; Milner v. Louisiana Highway Comm., 17 La. App. 28, 134 So. 441; Thompson v. Glen Hill Gravel Co., 19 La. App. 854, 141 So. 797; Crysel v. R. W. Briggs & Co. (La. App.) 146 So. 489, 490.

The learned trial judge, in reasons for judgment, commenting on the facts of the present case, as found by him, said: "These facts seem to be much stronger in favor of plaintiffs than the case of Bass v. Shreveport-Eldorado Pipe Line Co., 4 La. App. 107, in which the injury was considered compensable."

However, an examination of the Bass Case, referred to, discloses that this court, through Judge Odom as its organ, held that plaintiff was not entitled to compensation on the facts as there found to exist.

The fact that defendant's insurer, now insolvent, paid deceased compensation, and that defendant paid a large amount for hospital, nurses', and physicians' bills for his account, had some influence with the lower court in reaching a decision for plaintiffs, for it is said in reasons for judgment: " * * * Both the Commission and its bondsman must have considered the injury as arising out of or in the course of the employment."

Act No. 85 of 1926, p. 123, amending Act No. 20 of 1914, § 18, contains the following provision not found in the original act: "Neither the furnishing of medical services nor payments by the employer or his insurance carrier shall constitute an admission of liability for compensation under this act."

The incorporation of this amendment into the Workmen's Compensation Law was designedly done. It was intended to benefit the injured employee, as well as to protect the employer or his insurer. It is in keeping with the beneficent scope of this humane legislation. In the absence of such a law, the employer or his insurer, in doubtful cases, would not dare render first aid to the injured workman, pay hospital, doctors' or other bills for his account, nor compensation to him, because by doing so they would admit liability under the Workmen's Compensation

Law. Johnson v. Vernon Parish Lbr. Co., 151 La. 664, 92 So. 219.

The situation is now different.

"Where employer's insurance carrier paid weekly compensation to injured employee until it became insolvent, employer was not estopped from questioning employee's right to further compensation (Act No. 85 of 1926, § 18, par. 5)." Foret v. Paul Zibilich Co., Inc., 18 La. App. 363, 137 So. 366.

Defendant urges other defenses to the suit, but since we have reached the conclusion that the deceased was not injured while performing services arising out of and incidental to his employment, it is unnecessary to pass upon them.

The judgment appealed from is reversed and set aside, and plaintiffs' suit dismissed at their cost.