**No. 4250**

**Second Circuit**

———

**THOMPSON ET AL. v. GLEN HILL GRAVEL CO., INC.**

———

(May 20, 1932. Opinion and Decree.)

———

Wm. H. Mecom, of Columbia, attorney for plaintiffs, appellees.

Theus, Grisham, Davis & Leigh, of Monroe, attorneys for defendant, appellant.

DREW, J. Mrs. A. P. Thompson, individually and on behalf of her minor children, claims compensation from defendant for the death of her husband, whom she claims came to his death due to an accident while in the employ of defendant. The defenses raised by defendant are that plaintiff's husband was an independent contractor, and that if he was not an independent contractor, that deceased was not in the employ of defendant at the time of the accident which caused his death, and it did not arise out of his employment or within the scope of his employment. A determination of the case depends entirely upon the two defenses raised. The case was tried upon the following statement of facts:

"1. A. P. Thompson, a resident of Caldwell Parish, was married to Mrs. A. P. Thompson, plaintiff in the above suit, and there were born to this marriage three children, namely: Maxine Louise, aged 4 years, Patsy Ruth, aged 3 years, and Margaret Lavelle, aged 2 years; that at the time of the accident complained of the above named Mrs. A. P. Thompson and the three minor children of the said A. P. Thompson were actually living with the said A. P. Thompson and were dependent upon him solely for maintenance and support.

"2. That for the past three years said A. P. Thompson was making a living by hauling gravel, machinery, stones, etc., for a number of different parties, furnishing his own truck, fuel and upkeep of same and doing the hauling for a certain stipulated price that was agreed upon by the said A. P. Thompson and the parties for whom he was hauling; that on the morning of the accident sustained by A. P. Thompson and for a few days prior thereto he, the said A. P. Thompson, was hauling gravel for Mr. McKeithen for a stipulated amount per yard; that Mr. Sorrells, in the capacity of Manager of Glen Hill Gravel Company, Inc., asked Mr. McKeithen if he knew where he could get a man to do some hauling for the Glen Hill Gravel Co., Inc., and he replied that A. P. Thompson, who was then in his service, could get off and do the hauling for the Glen Hill Gravel Co., if satisfactory arrangements could be made with A. P. Thompson. Mr. Thompson was interviewed by Mr. Sorrells and the following verbal agreement was made by A. P. Thompson and the Glen Hill Gravel Company:

"Mr. Thompson was to haul a piece of machinery of a very delicate nature, weighing between 500 and 1000 pounds, for Glen Hill Gravel Company from Webb, La., to Rhinehart, La., for a stipulated sum of $10.00. Mr. Thompson was to furnish his own truck and all expenses incidental to the actual hauling and use of the truck, such as oil, gas, etc. The Glen Hill Gravel Company was to furnish a crew of men and a superintendent in charge of the crew of men to load and unload said machinery on and off the truck. The superintendent of the Glen Hill Gravel Company was to have the entire supervision and control over the loading and unload-

ing of the machinery on and off the truck, but the Glen Hill Gravel Company was to have nothing whatsoever to do with nor control or direction over the truck or its operation, until the machinery was loaded at which time the superintendent was to designate the route to be used by the truck and was to require careful and prudent operation of the truck until it had reached its destination.

"3. The Glen Hill Gravel Company would not have permitted Mr. Thompson to load and/or unload the machinery himself or with his own crew because of the delicate nature of the machinery and the size and weight of same and for the further reason that Mr. Thompson was not familiar with the handling of this machinery. The loading and unloading of said machinery was to remain in complete charge of the agents of the Glen Hill Gravel Company. Mr. Thompson had nothing to do with the machinery except to haul it under his agreement.

"4. That on or about 11 o'clock A. M., on the 11th day of March, 1931, A. P. Thompson left the service of McKeithen with his truck and started on his way to the gravel pit of the Glen Hill Gravel Company at Webb, Louisiana, in order to get the machinery that he was to haul, as above referred to. Before the said A. P. Thompson arrived at Webb, Louisiana, and before he had gotten the machinery and while driving his truck on the main gravel highway, which was a public highway under the control of the Louisiana Highway Commission, the truck turned over and injured the said A. P. Thompson to such an extent that he died from the said injuries on or about the 24th day of March, 1931; that the place of the accident was approximately fourteen miles from the plant or gravel pit of Glen Hill Gravel Company, where the piece of machinery to be hauled was located; that at the time of the accident the said A. P. Thompson was alone in his truck.

"5. That the said A. P. Thompson was engaged by the Glen Hill Gravel Company for this one particular job of hauling machinery under the agreement hereinabove mentioned, and when same was completed his contract with the Glen Hill Gravel Company was to terminate.

"6. That the Glen Hill Gravel Company, Inc., owned no trucks and whenever it was necessary for it to have any machinery, etc., hauled, said Glen Hill Gravel Company would have same done as in the present case.

"7. That the usual and average wage of a truck driver was $2.50 per day, working ten hours each day and six days a week, or a weekly wage of $15.00.

"8. That had the said A. P. Thompson completed his agreement to haul the machinery he would have covered a distance of approximately 85 miles.

"9. That the itemized statements of the doctors, hospital, and undertaker's charges attached hereto is the correct amount of expenses incurred by Mrs. A. P. Thompson."

The lower court rendered judgment for plaintiff, rejecting both defenses set up by defendant, and defendant prosecutes this appeal.

The attorney for defendant devoted the greater part of his brief and argument to the question of independent contractor, but we find it unnecessary to pass on that question, as it seems clear to us that the accident and death of deceased did not arise out of his employment or within the scope of his employment. Deceased was employed to haul a piece of machinery from Webb, La., to Rhinehart, La. That was the sole and only employment of deceased by defendant. It is true that he was employed at a place other than at Webb, La., but the work he was employed to do was to begin when the machinery was loaded at Webb, La., and to end when the machinery was unloaded at Rhinehart, La. The statement of facts contains the following clause:

"The superintendent of the Glen Hill Gravel Company was to have the entire supervision and control over the loading and unloading of the machinery on and

off the truck, but the Glen Hill Gravel Company was to have nothing whatsoever to do with nor control or direction over the truck or its operation until the machinery was loaded."

Defendant was not responsible for the manner in which the truck was brought to Webb, La., and with that it was not concerned. The truck might have been shipped to Webb or it might have been hauled there. The deceased and his truck were hired to perform a job which began at Webb and not before. Deceased, at the time of the accident, was going to a job he had been employed to perform. Plaintiffs argue that the employment necessarily contemplated that deceased would have to drive his truck from his home to Webb. We might presume that to be true, yet it would not be different if deceased had been employed by defendant to help load the machinery on some one else's truck. We could likewise presume that he would have to go from his home to Webb in order to be there to perform the work he was employed to do, and if he had used his truck as a mode of conveyance to Webb, or had ridden a train from his home to Webb, and the truck or train had wrecked, it could not be contended that the accident and resultant injury arose out of his employment or within the scope of his employment. It arose before the period of his employment began. He might have been employed the night before, but the work he was employed to perform was not to begin until his arrival at Webb. The general rule is that an injury to an employee on the public highway in going to or returning from the place of employment does not arise within the scope of or out of the employment. There are, however, exceptions to this rule. We do not think this case comes under any of the exceptions. Boutte v. R. L. Roland & Son et al., 15 La. App. 530, 132 So. 398.

If deceased had successfully made the trip to Webb and had hauled the machinery to Rhinehart and it had been unloaded, his work would have been finished. The money for his service would have been due. Whether he returned with his truck to his home or went elsewhere would have been of no concern to defendant. It cannot be successfully contended that, if the accident happened on his way returning home after the completion of his work, compensation would be due. The rule of law applies alike to going to work and returning from work. Deceased was driving his own truck on a mission of his own— going to a job he had been employed to perform. The manner of getting himself and his truck there was entirely with him and not the defendant.

If deceased was an independent contractor (which question we do not pass on), plaintiff could not recover. If he was an employee he could not recover for the reason he had not begun the work he was employed to perform, he was not on the premises where the work was to be performed, therefore the accident and resulting death of deceased did not arise out of his employment or within the scope of his employment.

The judgment of the lower court is erroneous.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be reversed, and that the demands of plaintiffs be rejected, with costs.