[No. 23894. Department One. December 21, 1932.]

LYDIA T. CARROLL, *Appellant*, v. WESTERN UNION TELEGRAPH COMPANY, *Respondent*, PRESTON O'BRIEN, *Defendant*.[1]

*Grinstead, Laube, Laughlin & Meakim,* for appellant.

*McMicken, Ramsey, Rupp & Schweppe* and *J. Gordon Gose,* for respondent.

Tolman, C. J.—The plaintiff, Lydia T. Carroll, while on a public street in the city of Seattle and in a place where she had a right to be, was struck and somewhat severely injured by the defendant Preston O'Brien, who at the time was in the general employ of the respondent, Western Union Telegraph Company, as a motorcycle messenger.

Suit to recover for these injuries was instituted against both the Western Union Telegraph Company and O'Brien. A trial was had to a jury, which rendered a substantial verdict in favor of the plaintiff. A motion for a judgment notwithstanding the verdict, or, in the alternative for a new trial, was interposed by the Western Union, and granted. Judgment on the verdict was rendered against O'Brien, and the Western Union was dismissed from the case with its costs.

The plaintiff has appealed from that part of the judgment which is in favor of the respondent Western Union.

The one question here presented is based upon the ruling of the trial court in refusing to enter judgment on the verdict against the Western Union and granting to it a dismissal, or, in the alternative, a new trial. The question we think can be reduced to this: Are the facts such as to justify the court in holding, as a matter of law, that O'Brien was not acting within the scope of his employment at the time of the accident?

It appears without contradiction that O'Brien was

in the employ of the Western Union as a motorcycle messenger, stationed at its branch office on First avenue south in the city of Seattle, and that it was his duty to deliver messages and packages as directed. On the day in question, at about mid-afternoon, not being then busy, he informed his superior that he needed some horn brackets for the purpose of attaching the horn to his motorcycle, and asked permission to go and get them.

Permission being accorded, he proceeded on his motorcycle a considerable distance through the public streets to the place where such accessories were sold, there bought the accessories which he sought, and paid for them with his own funds. He returned in a somewhat indirect way via a repair shop where his brother was employed, where he left the horn brackets, intending to return after work hours to have his brother attach them for him. He then proceeded from the repair shop toward his place of employment for the purpose of returning to his duties. The accident happened while he was so proceeding.

The employer made no deduction from the boy's pay for or on account of the time taken off from his regular duties to make the trip described. O'Brien was required to, and did, furnish his own motorcycle, was paid at the rate of fifty-five cents per hour for his services so equipped, and, of course, had to have a motorcycle and keep it in repair at his own expense, in order to hold his position as motorcycle messenger.

These are all of the facts we are able to gather from the record touching this particular question. They were brought out in the main by the appellant from Preston O'Brien, called as a witness in her behalf. By cross-examination, the situation was somewhat amplified and clarified, but there are no inconsistencies in the boy's evidence in this respect, and neither side

appears to question any of these facts, though they do differ as to conclusions to be drawn therefrom.

■ We quite agree with the appellant that it is the settled law of this state that a motion for judgment notwithstanding the verdict involves no element of judicial discretion, and can only be granted when the court can say, as a matter of law, that there is neither evidence nor reasonable inference from evidence to sustain the verdict. *Karr v. Mahaffay,* 140 Wash. 236, 248 Pac. 801, and cases there cited.

The expression "reasonable inference from evidence," as there used, means, of course, that, from the evidence already offered, the jury must be able reasonably to draw an inference of the existence of some other fact or facts not established by the direct evidence in the case, which inferred fact or facts are necessary to warrant the result reached by the verdict.

■ In considering what, if any, inference may be reasonably drawn from the facts outlined herein, it must be borne in mind at all times that we have no question of deviation from the course of employment by the employee O'Brien. He left the master's place of business not on the master's orders or in the course of the performance of any duty for the master, but solely for his own personal and private purpose of procuring accessories for his own motorcycle. We see no ground for any inference that the master was in the slightest degree interested in or to be benefited by what the boy should do during his permitted absence from his duties. That the master did not see fit to dock his pay to the extent of the time so lost, indicates a desire to accommodate quite in accordance with modern business ethics, rather than that the master was in some way benefited by the errand performed.

But it is argued that the boy, in order to hold his position and perform his duties, was required to have

a motorcycle in proper repair, and the master was concerned in seeing to it that the employee was so equipped. Likewise, to hold his position, the boy would require food, clothing, proper shelter, and perhaps medical care and other things too numerous to mention. Could it be reasonably argued that, if, after a hard day's work, the boy was on his way home to obtain food, rest and care necessary to fit him for the next day's work, he would therefore then be about the master's business and in the course of his employment? We see no difference in principle between the two situations. The boy was employed with his motorcycle, and the master was no more concerned in the upkeep and repair of the motorcycle than in the personal necessities of the boy.

The authorities cited by the appellant are mostly based upon facts showing that the servant had deviated from the course of his employment for personal reasons, and, his personal needs having been fully served, was returning to the course of his employment when the accident occurred. These authorities have no bearing here, because O'Brien was not sent out on any errand from the performance of which he deviated. On the contrary, at the time in question, O'Brien's duty was to be at his post in his employer's place of business. He was excused from that post temporarily for his own private advantage. He then became a free and independent person in pursuit of his own personal affairs, and so remained until he reported back to his post of duty.

We see no room for any other reasonable inference from the evidence in the case. The authorities relied upon by the appellant can all be clearly distinguished upon the facts, but on this question of deviation and return the authorities are in almost hopeless confu-

sion. A slight variation in the facts is all-important in attempting to bring order out of the chaos, and as we view the facts here, there is no present purpose to be served by analyzing these decisions.

Among the cases which lend support to our present views is *Tyler v. Stephan's Administratrix,* 163 Ky. 770, 174 S. W. 790, which cites with approval our own case of *Jones v. Hoge,* 47 Wash. 663, 92 Pac. 433, 14 L. R. A. (N.S.) 216, 125 Am. St. 915. The *Jones* case early established the rule, from which we have never departed, that even the owner of an automobile, whose servant takes it without his knowledge or authority and uses it for his own personal ends, is not to be held liable for injury caused by the servant's acts, because the servant's acts are beyond and outside the scope of his employment. This case, where the servant owned the vehicle and was privileged to use it as he pleased, save only as he was required to use it in his master's service, presents, we think, a stronger combination of facts leading to the conclusion that reasonable minds ought not to differ in drawing the inference that he was not within the scope of his employment during the period when he was excused by the master from his duties.

We are convinced that the trial court was right, and the judgment is therefore affirmed.

MITCHELL, HOLCOMB, MILLARD, and PARKER, JJ., concur.