O’CONNELL, Justice.
Edd Palmer, respondent, was successful in obtaining a compensation award for medical benefits and for temporary total disability relating to an injury received on November 19, 1958. This petition for writ of certiorari to review such order of the Industrial Commission was filed by his employer, Continental Turpentine & Rosin Corporation, and its carrier, Bituminous Casualty Corporation.
The employer, hereinafter referred to as Conturps, was engaged in the business of the extraction and processing of resin and the manufacturing of products derived from resin. It utilized tree stumps as a source of resin. Its plant was located in Dixie County, Florida, in the community of Shamrock, which is adjacent to Cross City. Conturps would lease land containing such stumps and have its employees remove the stumps therefrom and transport them to its plant. Respondent was so engaged and while at one time in these proceedings it was contended he was an independent contractor it is at this stage uncontroverted that he was an employee of Conturps. Therefore the question of whether the respondent was an independent contractor or employee is not before us.
Conturps leased a field containing tree stumps located some 90 miles from the plant and the adjacent town of Cross City, respondent’s home. Its arrangement with respondent and similar employees called for their going in their own equipment to the field, getting a load of stumps, and bringing the load to the plant. At the plant the load was weighed and they were compensated according to the weight of the load delivered. The only control exercised by Conturps over respondent and the other employees in the same occupation was that such employees were required to strip or “clean up” one field before proceeding to another. In other words, the employer controlled the situs of operations. Respondent was assigned no quotas to fulfill and was free to haul as many or as few loads as he wished.
*410 As noted, respondent and the other similar employees furnished their own equipment. It was necessary that they furnish all gas, maintenance, upkeep, and repairs to their equipment, since the employer was not obligated to do so. Respondent owned two Chevrolet trucks, one International truck, and a tractor. The two Chevrolet trucks were being purchased by him from a third person under a retained title contract and Conturps had a security interest therein. Conturps had no such interest in the International.
One of the Chevrolet trucks became disabled because of a burned out motor and was parked off the employer’s premises somewhere in the woods. On the day prior to the accidental injury herein involved respondent drove his International truck to the leased field and loaded it with stumps. Enroute to Conturps’ plant one of the tires of the International truck had a blowout. By shifting his load, respondent completed his haul without changing the tire. After unloading at the plant in Shamrock, he left the International truck at a gasoline filling station in nearby Cross City.
The next day, November 19, 1958, respondent used his other Chevrolet truck in making another haul of stumps from the leased field to Conturps’ plant, which he reached at about 1:30 or 2:00 P.M.
After unloading, respondent did not proceed to return to the field for the purpose of making another haul. Instead, he proceeded to the spot where the first mentioned Chevrolet truck was parked and removed its tires, which were in good condition. Then, he drove to the filling station in Cross City at which he had left his International truck for the purpose of replacing its tires, including the damaged one, with the good tires from the other Chevrolet.
Respondent entered an agreement with the filling station operator to have the tires changed at a reduced rate in exchange for his assistance in the actual labor. While he was engaged in such labor, between 5:00 and 6:00 P.M., a tire “exploded” and respondent suffered therefrom a fractured leg. He was temporarily and totally disabled a period of some months, up until July 1, 1959. At that time he reached maximum medical recovery with no permanent disability.
The deputy made a finding that respondent was an employee of Conturps and not an independent contractor, in view of the fact Conturps had the unrestricted power to terminate his services at will, with or without cause. He found that the truck respondent was working on was one used in the performance of his duties. The deputy concluded that:
“ * * * He was merely putting the truck into condition for use in the employer’s business. It appears, and I so find, that there is a causal connection between the injury and the employment of the claimant, and therefore, the claimant’s injury arose out of and in the course of his employment with Continental.”
It is noted that the deputy also remarked that the injury happened while respondent was repairing a vehicle used in the performance of his duties “and during the usual hours of employment.” This no doubt was based upon respondent’s testimony that normally he would leave his home in the morning no later than 4:00 A.M. in order to go to work and it would sometimes be 8:30 or 9:00 at night before he got back, although usually it would be between 5:00 and 7:00 P.M. Respondent also testified that sometimes he would make two trips a day to and from the field being used by Conturps, depending on its distance from the plant. However, the deputy found that because of the long distance from the plant to the field being used at the time of the accident (90 miles) respondent could make only one load a day when hauling from such site.
The full commission affirmed the deputy as to his finding that the accident arose *411 out of and in the course of his employment, commenting that:
“ ‘There is no dispute in the testimony,’ says the Deputy Commissioner, ‘that the claimant was required to furnish, maintain, and keep in running order his trucks used to transport stumps.’ Therein lies the crux of the entire case.”
This, then is a case wherein the employee was required to use his own trucks in his ■employer’s business and it was his responsibility to keep such in operating order. ■On the day of the injury he completed in the afternoon his labor of hauling stumps and left the employer’s premises. Some three or four hours later, in a public garage, he was injured in the repair of one of the trucks used in the hauling of stumps for the employer. While he was obligated to keep his vehicles in running order, he was not instructed by the employer to perform the necessary repair work himself. He could, as he sometimes did, employ others to perform such repairs. Further, it appears that in the instant case he attempted to employ the filling station operator to make the repairs for him, but due to the pressure of business at the station it became more convenient for him to assist in such repair, in exchange for a reduced charge. The employer had no control over the premises of the filling station and thus was in no position to direct or supervise the repairs or to take any steps to reduce the hazards thereof. The employer actually could not require respondent to repair this particular vehicle as he possessed at least one other truck capable of accomplishing the employer’s business. Further, it could be questioned whether the employer, had it had actual knowledge of the repair being attempted, would have approved such, for respondent took good tires from a truck in which the employer had a security interest, depreciating its value, to place upon his own vehicle, enhancing its value accordingly.
This Court has never ruled on the express point presented. In Glasser v. Youth Shop, Inc., Fla. 1951, 54 So.2d 686, a somewhat related problem was approached. The claimant was authorized to do his employer’s book work at home at night, but he was not required to do so. One morning he arose early, worked for an hour on the record book and papers which he had brought home at the end of the previous work day, and then, carrying the book and other papers in a folder, descended the stairs from the second floor in his home in order to have breakfast and then depart for his employer’s store. While descending the stairs he slipped, fell, and was injured. It was ruled the injury did not arise out of and in the course of his employment. The Court noted that he would have been on the stairway that morning regardless of whether or not he had brought any books home from the store. There is no suggestion in the opinion that the carrying of the folder of papers and the record book contributed in any way to the fall. The Court, 54 So.2d at page 688, did make the following statement:
“* * * If the appellant had been required to do the work at his home, then there might be some justification for saying that his employer had assumed the risks incident to performing the work on appellant’s own premises with the consequent liability under the Workmen’s Compensation Act. This question is not here presented, however, and we do not decide it.”
Since this Court has not squarely faced the instant problem previously, the disposition of such problem by other courts becomes pertinent.
An early annotation, Annotation 48 A.L. R. 1400 (1926) concluded that there was no well-defined rule governing the right of a teamster or truckman to recover under a workmen’s compensation law when he is injured before or after working hours, and the decision in each case must depend on its peculiar facts and the provisions of the applicable workmen’s compensation act.
*412 A more recent study states:
“There is much conflict and confusion in the cases as to whether or not an injury suffered by an employee while repairing a motor vehicle which he owns and uses in his employer’s business is compensable. Some authorities regard the repair of the vehicle as a matter purely personal to the employee so that an injury in the course thereof is not compensable, at least where the employee is not at the time on an errand for his employer. Even where the vehicle breaks down on the job, an injury suffered in connection with its removal and repair has been held not to be compensable.” 99 C.J.S. Workmen’s Compensation § 221, b, pp. 735-736.
A number of cases support the general principle that an injury suffered in the repairing of a motor vehicle owned by the employee and used in the employer’s business is not compensable. Petitioner cites Deaton Truck Line, Inc. v. Acker, 1957, 266 Ala. 611, 98 So.2d 429. See also Stuhr v. State Industrial Accident Comm., 1949, 186 Or. 629, 208 P.2d 450; McDonald v. Denison, 1947, 51 N.M. 386, 185 P.2d 508; Jarman v. Trucking, Inc., 1938, 286 Mich. 492, 282 N.W. 218; Pettet v. Monroe County Emergency Work Bureau, 1936, 248 App.Div. 797, 289 N.Y.S. 29; Kneeland v. Parker, 1926, 100 Vt. 92, 135 A. 8, 48 A.L.R. 1396.
On the other hand authority to the contrary may be found. Respondent cited such and reference to authority to that effect may be found in § 221b of 99 C.J.S., supra. See also Mosely v. Royal Indemnity Co., 5 Cir., 1934, 68 F.2d 220. It is also true that the instant case may possibly be distinguished somewhat from each of the cases cited, but we find such distinctions not to be so compelling as to preclude application of the basic doctrine of those cases relating to the instant question.
In Deaton Truck Line, Inc. v. Acker, 1957, 266 Ala. 611, 98 So.2d 429, supra, the appellant company leased or rented Acker’s truck and trailer for use in its freight hauling business and Acker was employed to drive such truck. It was agreed that Acker was to keep the vehicle in good mechanical condition and repair at his own expense. Further, he was instructed to keep the truck in an operating condition consistent with safety. Thus, he was expected to make or have made repairs in emergencies without operating the vehicle if it became dangerous to operate.
On a Sunday Acker discovered that the gasoline tank of the truck was leaking. As he expected to leave the next morning early on a hauling mission, he removed the tank and attempted to repair it. While so engaged Acker was killed as a result of the exploding of the tank.
The trial court was of the view the above facts gave to the employer-lessor, Dea-ton Truck Line, Inc., jurisdiction and control over the truck and Acker at all times, so that it followed that when he was repairing it he was engaged in the course of his employment.
The appellate court did not agree. It said, at page 433 of 98 So.2d:
“ * * * At that time he [Acker] was not under the direction or control of Deaton, which did not even have knowledge of his repair activities, nor was he subject to their supervision in the manner, place and time in which he made the repairs. He was free to accomplish his duty of properly maintaining the vehicle as he, in his sole discretion, deemed necessary subject only to the end result being satisfactory to Deaton.”
It is true that in the above case the Alabama court apparently put great significance in the fact there was a lease agreement between the parties pertaining to the truck and it was because of the terms of such lease Acker was making the repairs to the truck when he was killed. However, the same reasoning followed by the court *413 under those facts is equally applicable to the instant case, where no such lease agreement was involved. Here, the employer did not even have knowledge of the fact Palmer himself was undertaking to make the repair, that is, change the tire on the truck. It exercised no control or direction over Palmer’s activities in making such repair. Palmer was not subjected to its supervision as to the manner, place, or time in which he made the repair. He was free to accomplish his responsibility to maintain his truck in operating condition as he, in his sole discretion, deemed necessary. Further, he was not required to repair the vehicle, in which the employer had no proprietary or security interest, especially in view of the fact he had another vehicle in operating condition, although of course it was to his interest and the interest of the employer to have in simultaneous operation more than one vehicle engaged in the hauling of the stumps.
In Stuhr v. State Industrial Accident Comm., 186 Or. 629, 208 P.2d 450, supra, a similar case was involved, more similar to the instant case than to Deaton Truck Lines, supra, in that there was involved no lease of the employee’s truck to the employer. The accident happened during the employee’s normal working hours while he was attempting to make a repair to his truck. The accident was not held to be compensable. The court, 208 P.2d at page 453, said:
“Plaintiff was employed to haul gravel, not to do the work of a mechanic. In undertaking to remove springs from a wrecked car to install them on his truck, he engaged in work beyond the scope of the duties of his employment * *
In the instant case the respondent was employed to haul stumps, not as a mechanic. As in McDonald v. Denison, 51 N.M. 386, 185 P.2d 508, supra, the repairing of the vehicle, which resulted in the injury, occurred off the premises of the employer in a repair shop or garage with which the employer had no connection and where its business did not require the presence of the employee. We concur in the judgment of that court that the accident did not arise out of and in the course of his employment.
In reaching our decision we have not. been presented with and thus have not given consideration to the question whether we would reach the same conclusion had Palmer been injured while attempting to-change the tire at the time of the blowout,, while the truck, loaded with stumps, was enroute from the employer’s leased field to-its plant.
It is this Court’s opinion that the respondent-employee in this case at the time-of his injury was involved in a persona! mission not arising out of or in the course of his employment.
Accordingly, the petition for writ of cer-tiorari is hereby granted, the order of the Industrial Commission is quashed, and the cause remanded for further proceedings-consistent herewith.
THOMAS, C. J., and TERRELL,. HOBSON and THORNAL, JJ., concur.