[L. A. No. 29568. In Bank. Dec. 10, 1968.]

JO ANNE SMITH, Petitioner, v. WORKMEN'S COMPEN-
SATION APPEALS BOARD, COUNTY OF VENTURA
et al., Respondents.

Sydney Halem for Petitioner.

Everett A. Corten, Edward A. Sarkisian, Sheldon M. Ziff, T. Groezinger, Loton Wells, G. K. Bogue and Arthur C. Jones, Jr., for Respondents.

TOBRINER, J.—Petitioner seeks review of the appeals board's order denying reconsideration of an opinion and order by a referee denying workmen's compensation benefits on the ground that the death of petitioner's husband did not arise out of his employment. Since the accident occurred when the employee drove his car to the employer's premises pursuant to the employer's requirement that the employee furnish his own car, we hold that the so-called going and coming rule does not bar coverage.

Petitioner's husband, Charles Smith, worked as a social worker for Ventura County. In a one-car auto accident which occurred while he was en route from his home to his office at about 7:35 a.m. on December 27, 1965, Smith incurred injuries from which he subsequently died. Mrs. Smith filed this application for temporary disability, medical, and death benefits.

A referee appointed by the board heard the case and issued an opinion and order denying recovery. Petitioner filed a petition for reconsideration which the board denied. She then unsuccessfully sought review in the Court of Appeal. Although the report of the referee on the petition for reconsideration does discuss the case in somewhat greater detail, the orders of both the referee and the board state no more than that the injury did not arise out of the course of employment.

Under the well established going and coming rule, an employee does not pursue the course of his employment when he is on his way to or from work. (*Zenith Nat. Ins. Co.* v.

*Workmen's Comp. App. Bd.* (1967) 66 Cal.2d 944, 946 [59 Cal.Rptr. 622, 428 P.2d 606].) In a number of cases we have established exceptions to this rule, such as those in which the employer defrayed the travel expenses (*Kobe* v. *Industrial Acc. Com.* (1950) 35 Cal.2d 33, 35 [215 P.2d 736]) and those in which the employee engaged in a special errand for his employer. (*Zenith Nat. Ins. Co.* v. *Workmen's Comp. App. Bd., supra,* 66 Cal.2d 944; *Schreifer* v. *Industrial Acc. Com.* (1964) 61 Cal.2d 289, 291 [38 Cal.Rptr. 352, 391 P.2d 832].) Petitioner contends that we should recognize another exception to the rule in the instant case: that at the time of the accident Smith was engaged in the course of his employment inasmuch as he was bringing his car to work as required by his employer.[1] This contention raises questions of both fact and law.

We turn first to the factual issue. Although the board argues that substantial evidence supports the conclusion that Smith was not required to bring his car to work for use during the day, the record does not bear out this assertion. Indeed, the board rendered no finding to that effect; the board's interpretation of the going and coming rule would render any such finding unnecessary; the referee's report merely recited some of the evidence on this point. In any event, as we shall show, the evidence compelled the conclusion that Smith's employer required him to bring his car to work on the morning of December 27th.

Smith's immediate supervisor, Mrs. Blema Damitio, testified that every worker was required to furnish his own car, first, so that he could visit his clients on field days, and, second, so that he would be available to see clients in cases of emergency on regular office days. December 27th was one of Smith's regular office days. In addition, Mrs. Damitio stated that although four or five county cars were available if requested in advance by a worker whose car had broken down, Smith, to her knowledge, had never requested use of a county car.

---

[1]Petitioner does not contend that her husband received compensation for the cost of his trips to and from work; she does suggest that her husband was engaged in returning records and files to his place of work on the morning of December 27th, and for that reason pursued a special errand for his employer. The deceased's supervisor, Mrs. Damitio, however, testified that he was not allowed to take files out of the office; a fellow worker who examined the contents of Smith's briefcase stated that it did not contain information about any individual case on which Smith had been working, but only blank forms and some personal items. Accordingly, *substantial evidence supported the board's conclusion that Smith was not engaged in a special errand.*

The board suggests that Mrs. Damitio's testimony conflicted with the testimony of a Mr. Fowler. A safety and claims officer of the County of Ventura, Fowler stated that he had "something to do with the use of county cars" only indirectly; he kept insurance records but not separate personnel records concerning cars. Fowler attested that civil service regulations do not provide that a county social worker must have a car of his own; he did not suggest, however, that the regulations contained all of the rules relating to employment. Fowler also said that any social worker can drive a county vehicle if he so desires.

Fowler proceeded to testify that he could not say without checking his records whether *any* county social workers had in fact used county cars during the month of December 1967, and that he knew little or nothing about the procedures of the county welfare department for obtaining a car. When confronted with Mrs. Damitio's testimony, Fowler indicated he thought it was not wholly correct. Asked to state the basis of his conclusion, he said, "Like I said, there is no shortage of vehicles. I can see no reason to limit a County employee to using their own cars. It isn't necessary." Fowler also indicated he did not know the number of social workers employed by the Department of Social Welfare.

Fowler's testimony does not constitute substantial evidence that Smith was not required to provide his own car. Fowler had no idea of the content of the actual rules of the Department of Social Welfare; he could say no more than that there were "plenty" of cars; he presumed from this information that the department need not have required, and therefore did not require, social workers to furnish their own cars. Fowler's testimony presents no more than a conclusion. Fowler apparently did not know the number of cars available to the department, or the number of social workers who needed cars. Moreover, even assuming a surplus of cars, the department might nonetheless have required social workers to provide their own. Thus Fowler's garnered information could readily be reconciled with Mrs. Damitio's direct statements. In view of the board's failure to offer any basis for the conclusion that Mrs. Damitio misunderstood the department rules, her specific testimony on this question constitutes substantial evidence. The rather remote inferences suggested by Fowler do not. (Compare *Borak* v. *H. E. Westerman Lbr. Co.* (1953) 239 Minn. 327, 330 et seq. [58 N.W.2d 567].) Accordingly, the information provided by Fowler does not conflict with the testimony of Mrs. Damitio.

The social worker who replaced Smith, Mrs. Joan Sheldon, testified that the decision as to whether her own car would be used for field work was left to her "discretion." Respondents offered no evidence, however, that the department applied the same requirement to Mrs. Sheldon in June 1967 as it exacted of Smith in December 1965. To the contrary, the record contains the direct testimony of Smith's supervisor that she required him to furnish the car, while, since Mrs. Damitio left the department before November 1966, Mrs. Sheldon worked under a different supervisor than Smith.

Mrs. Sheldon's own statement that it was "unlikely" that the department possessed sufficient cars to furnish all of its social workers with cars effectively forecloses the possibility that *all* social workers were entitled to the use of county cars. Further, Mrs. Sheldon referred only to the rules under which she worked, not to the rules applied to social workers in general. Accordingly, Mrs. Sheldon's testimony as to her supervisor's instructions in 1967 after the accident does not raise a conflict with Mrs. Damitio's testimony as to her requirements of Smith in 1965 before the accident.

Concluding, as we must, that the department required Smith to have his car available on the job on the morning of December 27th, we turn to the legal issue: whether this requirement brought the trip within the course of his employment. Respondent correctly notes that we have previously held that such an obligation does not necessarily mean that the trip comes within the course of employment. (*Postal Tel. Cable Co.* v. *Industrial Acc. Com.* (1934) 1 Cal.2d 730 [37 P.2d 441, 96 A.L.R. 460].) Accordingly, the viability of the board's order depends upon the continued vitality of *Postal Telegraph.*

In *Postal Telegraph* the company employed one Mr. Mahret as a motorcycle messenger and required him to furnish his own motorcycle. In a morning traffic collision while en route to work, Mahret suffered injury. The Industrial Accident Commission awarded compensation; following a hearing in this court we affirmed the award without dissent. On rehearing, however, as dissenting Justice Langdon explains, "Justices Thompson and Seawell, who participated in the original decision, were not present at oral argument . . . and hence [were] disqualified. . . ." (*Id.* at p. 735.) Justice Curtis was absent. Justice Spence of the District Court of Appeal, serving as a Justice of the Supreme Court pro tem., joined three of the four remaining Justices in reversing the decision and denying recovery. Justice Preston, speaking for the court,

noted that many other states denied compensation in such situations, and ruled that although Mahret was required to have his motorcycle at his employer's office at 8 a.m., he was not obligated to drive it there.

*Postal Telegraph* did not lead to a long line of California decisions relying upon, or applying, the rule there stated.[2] In the 34 years since *Postal Telegraph* only two California decisions, one in 1935 and one in 1941, depend upon its holding, and both of them were decided by the Industrial Accident Commission.[3] In *Langendorf United Bakeries, Inc.* v. *Industrial Acc. Com.* (1935) 6 Cal.App.2d 46 [43 P.2d 1106], the court relied unnecessarily on *Postal Telegraph,* since in that case the employer did not require the injured employee to provide his own motor vehicle. On the other hand, in 1944, without mentioning our decision in *Postal Telegraph,* the Industrial Accident Commission awarded compensation to a boy injured while riding from his home on a bicycle to a point where he was to assist in the folding and sorting of papers and then to take the proper number of papers for his own bicycle deliveries. (*Bell* v. *Industrial Acc. Com.* (1944) 9 Cal. Comp. Cases 291.)

No case of ours since *Postal Telegraph* has reaffirmed, even by way of dictum, that holding. In *Richards* v. *Metropolitan Life Ins. Co.* (1941) 19 Cal.2d 236 [120 P.2d 650], we limited its effect by ruling that the going and coming rule did not apply to an injury incurred by an insurance agent when driving his own car from his home to his employer's office. In that case the agent performed duties in the field as well as at the office and "there was no requirement that he should first report to the office. . . ." (P. 243.) After a subsequent decade of silence on the problem, we cited *Postal Telegraph* in 1952 as an example of the going and coming rule, but in our description of the case and its ruling we pointedly omitted the fact that Mahret's employer had required Mahret to furnish his own motorcycle. (*Fireman's Fund etc. Co.* v. *Industrial Acc. Com.* (1952) 39 Cal.2d 529, 532 [247 P.2d 707].)

 *Postal Telegraph* must be overruled because it does not recognize an important limitation upon the going and coming rule. That limitation arises from the principle that an

[2] Our decision in *Postal Telegraph* was not widely noted at the time and what comment it did receive was mixed. (Note (1935) 9 So.Cal. L.Rev. 63 (critical); Note (1934) 23 Cal.L.Rev. 366 (favorable).)

[3] *McLain* v. *Industrial Acc. Com.* (1941) 6 Cal.Comp. Cases 187 (in which the wisdom of the *Postal Telegraph* rule was unsuccessfully challenged); *Paulus* v. *Ind. Acc. Com.* (1935) 20 I.A.C. 137.

employee "is performing service growing out of and inci-dental to his employment" (Lab. Code, § 3600) when he engages in conduct reasonably directed toward the fulfillment of his employer's requirements, performed for the benefit and advantage of the employer. Suspension of the employment relation and consequent non-coverage of the employee is incompatible with performance of service required by the employer. Hence the employer's requirement that the worker furnish a vehicle of transportation on the job curtails the application of the going and coming exclusion.

This condition to the exclusion finds illustration in the analogous holding that the rule succumbs in the instance of the special errand doctrine because the employee there "engage[s] upon a mission which incidentally or indirectly contribute[s] to the *service* and *benefit* of the employer." (Italics added.) (*Shell Oil Co.* v. *Industrial Acc. Com.* (1962) 199 Cal.App.2d 426, 428 [18 Cal.Rptr. 540].)

*Other* exceptions to the rule exemplify the same proposition. Thus it does not apply to the case in which "the employer furnish[es] transportation to the worker, or compensate[s] him for travel time or defray[s] his travel expenses" (*Zenith Nat. Ins. Co.* v. *Workmen's Comp. App. Bd., supra,* 66 Cal.2d 944), because at such times the employment relationship has been resumed. The relationship resumes no less effectively when the employer requires that the employee engage in conduct, whether prior to the workday or after it, whether on the premises of that employer or away from them, that inures to the benefit of the employer. The employment relationship can hardly be severed during the performance of an act required by the employer for his own purposes and advantage.

In the instant case the employer clearly benefited from Smith's bringing the car to work. ▮▮▮ Indeed, an employer must be conclusively presumed to benefit from employee action reasonably directed towards the execution of the employer's orders or requirements. An employer cannot request or accept the benefit of an employee's services and concomitantly contend that he is not "performing service growing out of and incidental to his employment."[4]

---

[4]The Fourth Appellate Division of the New York Supreme Court has argued that in a case such as this the employee acts exclusively in his own interest in driving his car home at night and returning it in the morning, since he does so in order to eat, sleep, and rest at home. (*Grathwohl* v. *Nassau Point Club Properties, Inc.* (1926) 216 App.Div. 107 [214 N.Y.S. 496], aff'd. 243 N.Y. 567 [154 N.E. 608]. See also *Carroll* v. *Western Union Tel. Co.* (1932) 170 Wash. 600, 604 [17 P.2d 49]; *In re Croxen*

 *Postal Telegraph* also erroneously held that an act fell outside the course of employment if it were not expressly or impliedly required by the contract of employment; since the contract there did not specify that Mahret take his motorcycle home at night or return it to the premises in the morning, his driving it at those times did not occur within the course of employment.[5] This constriction of the scope of employment into the rigidities of contractual provision completely overlooks the realities of the relationship. Employment contracts do not, and cannot, specify in minute detail each and every action to be performed by an employee while in the course of his employment. Most frequently the employee is instructed to obtain a given result and left to a variety of means to achieve it. If a messenger is instructed to take a letter to the other side of town, he may exercise complete discretion as to whether he goes by car, by bus, by subway, or on foot; yet he still acts in the course of his employment whatever means he chooses.

 In the present case the employer instructed Smith to have his car available on the job every morning. In driving the car to and from work, Smith carried out this order in a reasonable and normal manner, acquiesced in by his employer. Accordingly, even though Smith's employment contract said nothing about the manner of his transit to the job, he nevertheless acted within the course of his employment in thus furnishing his own car.

Whether or not the department ''controlled'' Smith's actions while he drove to and from the job raises no material issue.[6] No employer physically controls the actual driving of a car by an employee. Although an employer could conceivably fix the route taken by his employee, such restriction would neither terminate nor resume the relationship because the employer ''controlled'' the employee. If the department had

---

(1949) 69 Idaho 391, 397 [207 P.2d 537].) This argument stands the facts of this case upside down. It treats the car as a work tool subject to a special personal use, and regards eating, sleeping, and resting as unusual activities for an individual who is primarily an employee. In fact, neither the car nor Smith were owned by the county, and being in the employ of the county was not their ''normal'' status. Accordingly, the trip that Smith took each weekday morning and evening must be regarded as a diversion from purely personal activities, a diversion occasioned by and made for the benefit of his employer.

[5]See also *Thompson* v. *Glen Hill Gravel Co., Inc.* (1932) 19 La.App. 854, 857 [141 So. 797]; *In re Croxen, supra,* 69 Idaho 391, 396.

[6]The contrary position is taken in *In re Croxen, supra,* 69 Idaho 391; *Johnson* v. *State Highway Com.* (1926) 125 Me. 443 [134 A. 564]; *Morey* v. *City of Battle Creek* (1925) 229 Mich. 650 [202 N.W. 925].

paid Smith so many cents per mile for transportation to and from work, that factor would exert no more "control" over him than it did here; yet in that case Smith's conduct would clearly have been embraced within the course of his employment.[7]

Accordingly, we find no support in principle for the result in *Postal Telegraph*. Moreover, the decisional foundations of *Postal Telegraph* have been eroded over the years; the precedents upon which it rested have largely lost their strength, and, indeed, as we shall show, the modern trend of the cases sanctions recovery in such a situation as this.

In support of *Postal Telegraph* we cited in the opinion 11 cases from a total of 10 states.[8] Two of the cited cases, *Inland Gas Corp.* v. *Frazier, supra,* 249 Ky. 432, and *Denver & R.G.W.R. Co.* v. *Industrial Com., supra,* 72 Utah 199, do not support the conclusion reached in *Postal Telegraph*. In *Inland Gas* the employee had stopped overnight at his home while en route from one of the company's plants to another. His home lay at a point off the direct route between the two plants; the next morning the employee was killed in an automobile accident while returning to that direct route. The court denied recovery, holding that the detour from the direct route had been undertaken solely for the private purposes of the employee. Since the employer did not require the employee to provide the car at the job, *Inland Gas* fundamentally differs from *Postal Telegraph* and the case at hand. Similarly, in the *Denver* case the injured employee not only was not required to provide a car at work, but was not driving his own car when the accident occurred. The injured employee did ride in a truck driven by a fellow employee who was required to provide the vehicle to transport employees later in the day, but this factor raised issues quite unlike those in the instant case.

Of the remaining nine cases, four have either lost their vitality or have been tacitly overruled. In Louisiana the deci-

[7]*Zenith Nat. Ins. Co.* v. *Workmen's Comp. App. Bd., supra,* 66 Cal.2d 944, 948-949.

[8]*Chernick's Case* (1934) 286 Mass. 168 [189 N.E. 800]; *Hartford Acc. & Indem. Co.* v. *Lodes* (1933) 164 Okla. 51 [22 P.2d 361]; *Inland Gas Corp.* v. *Frazier* (1933) 246 Ky. 432 [55 S.W.2d 26]; *Thompson* v. *Glen Hill Gravel Co.* (1932) 19 La.App. 854 [141 So. 797]; *Fidelity & Cas. Co.* v. *Industrial Acc. Com.* (1932) 79 Utah 189 [8 P.2d 617]; *Carroll* v. *Western Union Tel. Co., supra,* 170 Wash. 600; *Denver & R. G. W. R. Co.* v. *Industrial Acc. Com.* (1928) 72 Utah 199; *Johnson* v. *State Highway Com., supra,* 125 Me. 443; *Kneeland* v. *Parker* (1926) 100 Vt. 92 [135 A. 8, 48 A.L.R. 1396]; *Grathwohl* v. *Nassau Point Club Properties, Inc., supra,* 216 App.Div. 107 [214 N.Y.S. 496], affd. 243 N.Y. 567 [154 N.E. 608]; *Morey* v. *City of Battle Creek, supra,* 229 Mich. 650.

sion in *Thompson* v. *Glen Hill Gravel Co., supra*, 19 La..App. 854, appears to have been supplanted by the holding of *Willis* v. *Cloud* (La.App. 1963) 151 So.2d 379, permitting recovery in a case such as ours. *Thompson* was decided by the Court of Appeal for the Second Circuit of Louisiana, while *Willis* was decided by the Third Circuit, but the Louisiana Supreme Court refused certiorari for the *Willis* decision. (P. 379.) In Vermont the Supreme Court has questioned the vitality of its decision in *Kneeland* v. *Parker, supra*, 100 Vt. 92, noting that the case on which *Kneeland* rested was no longer followed. (*Kenney* v. *Rockingham School Dist.* (1963) 123 Vt. 344 [190 A.2d 702].)

The cited case of *Hartford Acc. & Indem. Co.* v. *Lodes, supra,* 164 Okla. 51, relied on the proposition that an employee on his way to work did not pursue the course of employment unless he encountered some special danger incident to the means of approach to the place of work, or unless he undertook some substantial mission for his employer. Although the Oklahoma Supreme Court there held that the employee rendered no service to his employer by bringing his wagon to work (164 Okla. at p. 53), that court later held in *Weatherbee Elec. Co.* v. *Duke* (Okla. 1955) 294 P.2d 298, that a sufficient service was performed by an employee who brought to work a few tools, some his own and some his employer's, required for his job. In addition, *Hartford* relied heavily on another case cited in *Postal Telegraph, Fidelity & Cas. Co.* v. *Industrial Com., supra,* 79 Utah 189. *Fidelity* has clearly been overturned as the rule of decision in Utah; in *Bailey* v. *Utah State Industrial Com.* (1965) 16 Utah 2d 208 [398 P.2d 545], the Utah Supreme Court explicitly held that an employee was within the course of his employment in bringing his own vehicle to work as required by his employer. *Bailey* cited *Fidelity* as merely affirming the general going and coming rule, ignoring the fact that the employee in *Fidelity* had been required by his employer to bring his wagon and team to work.

Although only five of the original eleven citations now retain vitality, *Postal Telegraph* did represent the majority rule in 1934. Fourteen states had considered the problem of accidents relating to vehicles required for employment before *Postal Telegraph*. Of these, eleven denied recovery.[9] Four

[9] *Chernick's Case, supra,* 189 N.E. 800; *Hartford Acc. & Indem. Co.* v. *Lodes, supra,* 164 Okla. 51; *Carroll* v. *Western Union Tel. Co., supra,* 170 Wash. 600; *Thompson* v. *Glen Hill Gravel Co., supra,* 19 La.App. 854;

decisions before *Postal Telegraph* allowed recovery.[10] Of these four we mentioned only *Maryland Cas. Co.* v. *Smith, supra,* 40 S.W.2d 913, in our decision. We suggested that this case might be distinguished because the Texas definition of "course of employment" differed from our own. The Texas case we cited for this proposition, however, held that the Texas definition was not broader but narrower than our own. (*American Indem. Co.* v. *Dinkins* (Tex.Civ.App. 1919) 211 S.W. 949, 952.)

Since *Postal Telegraph,* however, the trend has been decidedly in favor of recovery, and Professor Larson regards this treatment as the better rule. (1 The Law of Workmen's Compensation, § 17.50.) Of the 10 states considering the question for the first time, or modifying their earlier position, seven disagreed with the result in *Postal Telegraph.*[11] In two other states the earlier rule against recovery is now of doubtful vitality.[12] Only three of the ten decisions since *Postal Telegraph* deny recovery for accidents related to motor vehicles required for employment. (*Continental Turpentine & Rosin Corp.* v. *Palmer* (Fla. 1961) 129 So.2d 409; *In re Croxen, supra,* 69 Idaho 391; *McDonald* v. *Denison* (1947) 51 N.M. 386 [185 P.2d 508].)

Although the 14 cases supporting *Postal Telegraph* all dealt with vehicles owned by an employee but required for employment by the employer, most involved facts which could be distinguished from the present case according to our rationale of "course of employment." In seven of the cases the acci-

---

*Fidelity & Cas. Co.* v. *Industrial Com., supra,* 79 Utah 189; *Jotich* v. *Village of Chisholm* (1927) 169 Minn. 428 [211 N.W. 579]; *Prayther* v. *Deepwater Coal & Iron Co.* (1927) 216 Ala. 579 [114 So. 194]; *Johnson* v. *State Highway Com., supra,* 125 Me. 443; *Grathwohl* v. *Nassau Point Club Properties, Inc., supra,* 216 App.Div. 107 [214 N.Y.S. 496], affd. 243 N.Y. 567 [154 N.E. 608]; *Kneeland* v. *Parker, supra,* 100 Vt. 92; *Morey* v. *City of Battle Creek, supra,* 229 Mich. 650.

[10] *Driscoll Constr. Co.* v. *Industrial Com.* (1934) 94 Colo. 568 [31 P.2d 491]; *Maryland Cas. Co.* v. *Smith* (Tex.Civ.App. 1931) 40 S.W.2d 913; *State etc. Fund* v. *Industrial Com.* (1931) 89 Colo. 426 [3 P.2d 414]; *Speas* v. *Boone County* (1929) 119 Neb. 58 [227 N.W. 87].

[11] *State Dept. of Highways* v. *Johns* (Alaska 1967) 422 P.2d 855, 861, fn. 22; *Bailey* v. *Utah State Industrial Com., supra,* 16 Utah 2d 208 (tacitly overruling *Fidelity*); *Willis* v. *Cloud, supra,* 151 So.2d 379 (disagreeing with the decision in *Thompson,* of which the court was apparently unaware); *Pittsburgh Testing Laboratories* v. *Kiel* (1960) 130 Ind.App. 598 [167 N.E.2d 604]; *King* v. *State Industrial Acc. Com.* (1957) 211. Ore. 40 [315 P.2d 148]; *Borak* v. *H. E. Westerman Lbr. Co., supra,* 239 Minn. 327 (tacitly overruling *Jotich* v. *Village of Chisholm, supra,* 211 N.W. 579) *Davis* v. *Bjorenson* (1940) 229 Iowa 7 [293 N.W. 829].

[12] See *Kenney* v. *Rockingham School Dist., supra,* 190 A.2d 702; *Weatherbee Elec. Co.* v. *Duke, supra,* 294 P.2d 298.

dent did not occur while the vehicle was in motion.[13] In eight cases the employee was not on a daily or hourly wage, but was paid according to the quantity of goods he hauled in his wagon or truck, thus resembling in some ways an independent contractor.[14] Similarly, in four other cases the employee's only task was transporting or delivering goods in his vehicle.[15] Only in *Chernick's Case, supra,* 189 N.E. 800, was an employee other than a teamster injured while actually en route to or from work,[16] and the claimant in that case did not argue that the injured employee was engaged in the course of his employment by virtue of his bringing to his employer's office an automobile required to carry out his regular duties.

We conclude that the decisional basis of *Postal Telegraph* has been eroded, that the case does not represent the trend of authority, and that it must be overruled. Surely in this day of a highly motorized society we cannot cast the going and coming rule as a protective cloak over the shoulders of the employer who, for his own advantage, demands that the employee furnish the car on the job. Smith's obligation reached out beyond the employer's premises, and, in driving his car to and from them, he did no more than fulfill the condition and requirement of his employment.

[13]*Continental Turpentine & Rosin Corp.* v. *Palmer, supra,* 129 So.2d 409 (fractured leg while changing a worn tire); *McDonald* v. *Denison, supra,* 185 P.2d 508 (eye injured while fixing broken spring at public repair shop); *Jotich* v. *Village of Chisholm, supra,* 211 N.W. 579 (injured while unhitching own team of horses to feed them at lunch time); *Prayther* v. *Deepwater Coal & Iron Co., supra,* 114 So. 194 (kicked while trying to feed own mule after end of work day); *Johnson* v. *State Highway Com., supra,* 125 Me. 443 (injured while unhitching horses at the end of the day); *Kneeland* v. *Parker, supra,* 100 Vt. 92 (killed while cleaning horse before work); *Grathwohl* v. *Nassau Point Club Properties, Inc., supra,* 216 App.Div. 107 [214 N.Y.S. 496], affd. 243 N.Y. 567 [154 N.E. 608] (wrist injured while cranking automobile in the morning).

[14]*Continental Turpentine & Rosin Corp.* v. *Palmer, supra,* 129 So.2d 409; *In re Croxen, supra,* 69 Idaho 391; *McDonald* v. *Denison, supra,* 185 P.2d 508; *Hartford Acc. & Indem. Co.* v. *Lodes, supra,* 164 Okla. 51; *Thompson* v. *Glen Hill Gravel Co., supra,* 19 La.App. 854; *Prayther* v. *Deepwater Coal & Iron Co., supra,* 114 So. 194; *Johnson* v. *State Highway Com., supra,* 125 Me. 443; *Kneeland* v. *Parker, supra,* 100 Vt. 92.

[15]*Carroll* v. *Western Union Tel. Co., supra,* 170 Wash. 600; *Fidelity & Cas. Co.* v. *Industrial Com., supra,* 79 Utah 189; *Jotich* v. *Village of Chisholm, supra,* 211 N.W. 579; *Morey* v. *City of Battle Creek, supra,* 229 Mich. 650.

[16]Six cases allowing recovery involved such facts: *State Dept. of Highways* v. *Johns, supra,* 422 P.2d 855; *Bailey* v. *Utah State Industrial Com., supra,* 16 Utah 2d 208; *Pittsburgh Testing Laboratories* v. *Kiel, supra,* 130 Ind.App. 598; *King* v. *State Industrial Acc. Com., supra,* 315 P.2d 148; *Davis* v. *Bjorenson, supra,* 229 Iowa 7; *State etc. Fund* v. *Industrial Com., supra,* 89 Colo. 426.

The decision of the Workmen's Compensation Appeals Board is annulled and the cause is remanded to that board for proceedings consistent with the views herein expressed.

Traynor, C. J., Mosk. J., and Sullivan, J., concurred.

BURKE, J.—I dissent. On the factual issue the record does not compel the finding that the employer required the deceased employee to furnish his own car. Instead, the majority opinion has reweighed the evidence, attempting to reconcile the testimony which conflicts with the "conclusion" it announces, and has usurped the role of fact-finder contrary to fundamental rules governing the functions of this court.

As stated by the referee in his report to the Appeals Board on the petition for reconsideration in this case, "The witness Damitio had made a statement on . . . her deposition that the county did not make a county car available to the decedent. However, the witness Fowler contradicted this in part, and stated that there are plenty of cars but lots of times people use their own cars and are reimbursed therefor. . . ." Fowler further testified positively that "All field employees" who so desire "can drive a County vehicle," and that a person who does not have his own vehicle "may still be hired as a County social worker as long as he . . . has a valid California operator's license." Fowler also stated that Mrs. Damitio's remarks made in her deposition "would probably be their own version . . . of the way availability of the cars are because as far as my knowledge is concerned, there is no shortage of cars, be no reason . . . to limit a County employee to using their own cars. It isn't necessary."

Additionally, although Mrs. Joan Sheldon, who took over the deceased's caseload, gave her testimony in July 1967, nothing whatever in the record warrants, let alone compels, the view that she was speaking solely of 1967 requirements when she declared that whether or not she used her own car for her field work was left "strictly" to her "own discretion." Instead, Mrs. Sheldon was a co-employee with the decedent in the county's social welfare department. She testified that she knew decedent "Quite well," and had conversations with him in the office concerning their work "just about every day in the week." Mrs. Sheldon further testified that she had "never used a County car," but instead had always used her own car as she preferred to do so; however, she knew county social welfare "workers that do use the County cars." It is thus obvious that Mrs. Sheldon's testimony that the

social welfare field workers were *not* required to provide their own vehicles referred to the period before decedent's death, when she and decedent were coworkers, and creates a direct conflict with the testimony of Mrs. Damitio on the point.

On the legal issue, I am convinced that the rule established in *Postal Telegraph* (*Postal Tel. Cable Co.* v. *Industrial Acc. Com.* (1934) 1 Cal.2d 730 [37 P.2d 441, 96 A.L.R. 460]) and followed for 34 years is sound and would adhere to it. Accordingly, even if it had been found below that the employer required decedent to provide his own vehicle, compensation should be denied under the "going and coming" rule when, as here, the injuries were suffered by the employee while regularly en route to report in at his established office headquarters as required by his employment.[1]

I would affirm the decision of the Appeals Board.

McComb, J., and Schauer, J.,* concurred.

The petition of the respondent board for a rehearing was denied January 8, 1969. Schauer, J.,* sat in place of Peters, J., who did not participate. McComb, J., Burke, J. and Schauer, J.,* were of the opinion that the petition should be granted.

---

[1]It bears note that this case differs from *Le Febvre* v. *Workmen's Comp. App. Bd.* (1968) *ante,* p. 386 [71 Cal.Rptr. 703, 445 P.2d 319]. The employment of the volunteer fireman there involved had no established headquarters where he was regularly required to report. In the present case the social workers were required to report in at the office the first thing each working morning, even on "field days."

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.